## Strunk's Lane & Jellico Mountain Coal & Coke Co. v. Manus.

(Decided Nov. 9, 1937.)

WILL H. CAYLOR for appellant.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Strunk's Lane & Jellico Mountain Coal & Coke Company owns approximately 450 acres of land in McCreary county near the Tennessee line. An ex-

tensive coal mining operation had been conducted on the land, but the main body of coal had been mined out; and the mining operations had been abandoned when the appellee, J. R. Manus, leased 10 acres of the tract from appellant on December 1, 1933. The lease was for a term of three years, and by its terms Manus agreed to pay the appellant a royalty of 15 cents a ton on all coal mined by him and sold for less than $3 a ton. The royalty was to increase at the rate of 5 cents a ton for each additional dollar per ton received by the lessee. The lessee opened two entries on the 10-acre tract. He was a coal miner without financial resources, and, about two months after he began work, he entered into a partnership with R. F. Creekmore, a merchant in Pine Knott, who had a moderate amount of capital. About February 1, 1934, appellant leased to J. R. Manus and R. F. Creekmore its entire tract of 450 acres. The contract was dated back to January 1, 1934. It was for a term of ten years, and provided for a royalty of 10 cents a ton on all coal mined, and included the 10-acre tract of land theretofore leased to Manus. Under the second contract, the lessees agreed to erect a tipple, a storehouse, and a dwelling house, and to fence and cultivate the land. During the months of February and March, 1934, Manus continued to mine coal on the 10-acre tract, and paid a royalty of 10 cents per ton on the coal mined. The second contract contained the provision that it could be terminated by mutual agreement of the parties. After it had been in effect about two months, Creekmore became dissatisfied, notified appellant that he desired to have the contract canceled, and returned to it the copy of the contract which had been delivered to him and Manus. Appellant notified Manus that Creekmore had been released under the contract. Manus continued his mining operations, and thereafter paid the royalty each month at the rate of 15 cents a ton, the rate fixed in the first contract. In December, 1935, in an action in the McCreary circuit court, in which Mary Strunk was plaintiff and the Strunk's Lane & Jellico Mountain Coal & Coke Company was defendant; it was adjudged that Mary Strunk was the owner of the 10-acre tract of land on which Manus was conducting his mining operations. Manus was evicted, and he thereupon brought this action against the Strunk's Lane & Jellico Mountain Coal & Coke Company to recover damages in the

sum of $1,000. The defendant, in an answer and counterclaim, alleged that Manus had breached the contract dated January 1, 1934, by failing to erect a tipple, store, and dwelling house therein referred to, and asked for damages in the sum of $1,063.25. On the trial, the jury returned a verdict for the plaintiff for $200, and found nothing for the defendant on the counterclaim, and it has appealed.

There was ample evidence to show that appellee had been damaged at least $200 by the eviction. The only issue about which there was any controversy related to the contract under which appellee was operating. Was he operating under the contract of December 1, 1933, or the contract dated January 1, 1934? Appellant argues that the second contract superseded the first contract, and therefore that its liability must be measured by that instrument. It is satisfactorily established by the evidence that both parties understood that the second contract had been abandoned, and that Manus was continuing his operations under the first lease. Until the second contract was executed, Manus paid to appellant royalties at the rate of 15 cents a ton, the rate fixed by the first contract, but during the two months that the second contract was in force he paid royalties at the rate of 10 cents a ton. After Creekmore surrendered the second contract, Manus paid royalties monthly at the rate of 15 cents a ton until he was evicted in December, 1935. All of his operations were conducted on the 10-acre tract, and he made no effort to erect a tipple, store, or dwelling house, or to carry out any of the provisions of the second contract, and no demand upon him in this respect was made by appellant. Manus testified that he saw Mr. Crinkley, appellant's representative, and told him that he was financially unable to carry out the second contract, and that it was agreed that he should continue operations under the contract of December 1, 1933.

Appellant complains because the instructions offered by it were not given, but the instructions given by the court aptly submitted the questions in issue. Under the instructions given, the jury was authorized to find for appellant upon its counterclaim if it believed that the contract dated January 1, 1934, had not been abandoned by mutual agreement.

The judgment is affirmed.